**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**JEANETTE HADESTY,**                          :

    **Plaintiff,**                                        :

      **v.**                                               :

**RUSH TOWNSHIP POLICE**                :
**DEPARTMENT, *et al.***
                                         :

    **Defendants**                                   :

                                         :

**CIVIL ACTION NO. 3:14-2319**

**(JUDGE MANNION)**

## MEMORANDUM

Pending before the court is a motion to dismiss the plaintiff's amended complaint, filed on behalf of defendants Ryan Township, Officer Adam Sinton, and Officer Thomas Fort, for failure to state a claim upon which relief may be granted. (Doc. 21). For the reasons that follow, the motion to dismiss will be **GRANTED in part** and **DENIED in part**.

## I.   RELEVANT BACKGROUND

According to the Amended Complaint, this action relates to events that took place on the night of March 5, 2014. At approximately 11:30pm on that evening, the plaintiff, Ms. Jeanette Hadesty, was driving in her step-father's vehicle on Bernhard Road in Rush Township. (Doc. 12, ¶ 14). Officer Sinton and Officer Fort, Ryan Township police officers who are defendants in this case, followed the plaintiff's vehicle for "an extended period of time," and then initiated a traffic stop. *Id.* ¶¶ 15, 16. Defendants Sinton and Fort claimed that

1

they stopped the vehicle because it had a "loud exhaust." *Id.* As the officers approached the plaintiff's vehicle, they recognized her and stated, "Oh its[sic] Ms. Hadesty." *Id.* ¶ 17. They then requested her license and the vehicle registration, which she provided. *Id.* ¶ 18. The officers then saw a pill bottle in the center console of the car and asked the plaintiff if they could inspect the bottle, and the plaintiff "cooperated with the Officer's request." *Id.* ¶ 19. After inspecting this pill bottle, the officers asked to and then searched the plaintiff's purse. (Doc. 12, ¶ 20).

The plaintiff was then told that she needed to remain in the car, which she did for about thirty (30) minutes until Sergeant Frederick, a police officer for Rush Township and defendant in this case, arrived. (Doc. 12, ¶¶ 21-22). The Sergeant personally knew the plaintiff because he and the father of plaintiff's children (now deceased) worked together on the Rush Township Police force prior to the father's death. *Id.* ¶ 24. The Sergeant insulted and made derogatory comments to the plaintiff. *Id.* ¶ 25. The plaintiff was then asked to step out of the vehicle so that the officers could search the vehicle for "drugs and other paraphernalia"; she complied with the request, and Officers Sinton and Fort searched the entire vehicle. *Id.* ¶¶ 26-27. During this time, Sergeant Frederick subjected the plaintiff to a field sobriety test while continuing to insult and yell at her. *Id.* ¶¶ 28-29. At some point during this incident, Officer Sinton shined a flash light into the plaintiff's nose and made a comment to her about snorting drugs. *Id.* ¶ 30. After the search of the

vehicle, the Officers began questioning the plaintiff about the prescription medicine bottle that they found under the passenger side seat in the car, and she explained that the pill bottle belonged to her step-father. (Doc. 12, ¶ 31). Her step-father eventually arrived at the scene and confirmed that the medicine bottle found under the passenger seat was, indeed, his. *Id.* ¶ 32. Plaintiff was finally released, after two (2) hours of detainment, but she was not cited for having a "loud exhaust" or for any traffic violation. *Id.* ¶¶ 33, 34, 35.

Sergeant Frederick later filed a criminal complaint against the plaintiff for placing controlled substances in unmarked or fraudulently marked containers and for knowingly and intentionally having possession of controlled substances without a prescription for such substances. 35 Pa. Stat. Ann. §§ 780-113(a)(7), (16); (Doc. 12, ¶ 34); Commonwealth v. Hadesty, MJ-21306-cr-0000128-2014 (Magis. Dist. Ct. filed Mar. 27, 2014). The charges were later dropped. Commonwealth v. Hadesty, MJ-21306-cr-0000128-2014 (Magis. Dist. Ct. filed Mar. 27, 2014).

Due to the stated events, the plaintiff commenced the instant action by filing an initial complaint on December 5, 2014, naming John Doe, Rush Township Police Department, and Adam Sinton as defendants. (Doc. 1). Then, on February 18, 2015, the plaintiff filed an amended complaint ("complaint"), naming Duane Frederick, Rush Township o/a Rush Township Police Department, Ryan Township o/a Ryan Township Police Department,

Adam Sinton, and Thomas Fort as defendants. (Doc. 12) Defendants Duane Frederick and Rush Township filed an answer to the complaint on March 4, 2015. (Doc. 20). Defendants Sinton, Fort, and Ryan Township ("defendants") filed a motion to dismiss for failure to state a claim on April 20, 2015, (Doc. 21), and then timely filed their Brief in Support of the motion on May 4, 2015. (Doc. 23). Defendants Frederick and Rush Township "take no position" with regard to the motion to dismiss. (Doc. 21, Ex. 1). The plaintiff filed a Brief in Opposition to the motion on May 21, 2015, (Doc. 27), and the defendants filed a Reply Brief on June 5, 2015. (Doc. 28). Having received briefs from both the moving defendants and the plaintiff, the court deems the motion ripe for review.

## II.    STANDARD OF REVIEW

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language

found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly, 550 U.S. 544, 127 S. Ct. at 1965*. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to

dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III.    DISCUSSION

The defendants move to dismiss the complaint for failure to state a claim on numerous grounds. First, they claim that the stop of the plaintiff's vehicle and the resulting search and seizure were reasonable and did not violate the Fourth Amendment. The defendants also claim they cannot be held liable under a theory of malicious prosecution because Officers Fort and Sinton did not initiate the prosecution. In addition, the defendants argue that Ryan Township may not be held liable because its officers (Fort and Sinton) are not liable and because the plaintiff has failed to plead sufficient facts to support a claim for municipal or supervisory liability. The defendants further seek dismissal of all state law and constitutional claims because Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") bars all state

claims and Pennsylvania's constitution does not provide a claim in these circumstances. The defendants also claim that the plaintiff cannot bring a Fourteenth Amendment due process claim alongside a Fourth Amendment Claim. And, finally, the defendants seek dismissal of any claim for punitive damages against Ryan Township because federal law bars such relief. The court will address each ground for dismissal separately, below.

**A.    Consideration of Documents Outside the Pleadings**

As a preliminary matter, the court will address whether the documents attached to the defendants' motion to dismiss may be considered when they were not included or incorporated into the complaint. As mentioned above, when determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules, the court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)), *abrogated in part on other grounds by* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007); *see also* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Sands*, 502 F.3d at 268 (quoting *In re Burlington*, 114 F.3d at 1426). Courts may also consider items subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must

7

consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

In this case, the plaintiff filed a complaint without any documents attached. The defendants, rather than filing an answer to the complaint, filed a motion to dismiss pursuant to Rule 12(b)(6). Attached to the defendants' Brief in Support of the motion were two exhibits: 1) the police Incident Investigation Report ("Exhibit 1"), the authenticity of which the plaintiff disputes[1]; and 2) the Criminal Complaint ("Exhibit 2"). (Doc. 23, Ex. 1, 2). The defendants rely on information and facts contained in these exhibits to support claims and affirmative defenses included in their motion to dismiss. The plaintiff argues that the court is precluded from considering these documents at the motion to dismiss stage and requests that the court reject the defendants' arguments for dismissal insofar as they are based upon facts contained in these two exhibits. The defendants argue that these exhibits, while not attached to the complaint, may be considered because they are "matters of public record" or "documents that form the basis of a claim." (Doc.

---

[1] The plaintiff describes Exhibit 1, the Incident Investigation Report, as "an unknown document that looks like an internal document of Rush Township." (Doc. 27, p. 6).

23, pp. 2-3).

As stated above, in a motion to dismiss, the court may consider matters of public record. *See Lum*, 361 F.3d at 222 n.3. The Third Circuit has narrowly defined "public records" for the purpose of Rule 12(b)(6) as "criminal case dispositions such as convictions or mistrials, decisions of government agencies, and published reports of administrative bodies." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted); *see also* Grp. Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 127 (3d Cir. 2016) (citing and applying the same definition of "public records"). Many lower courts in the Third Circuit have strictly construed and applied the *Pension* court's narrow definition. *See, e.g.,* Warren v. Matthey, No. CV 15-01919, 2016 WL 215232, at *5 (E.D. Pa. Jan. 19, 2016); Dana v. Baker Hughes, Inc., No. 4:14-CV-01861, 2015 WL 5576880, at *8 n.8 (M.D. Pa. Sept. 21, 2015); Joseph M. v. Northeastern Educ. Intermediate Unit 19, 516 F. Supp. 2d 424, 434-35 (M.D. Pa. 2007); McCool v. City of Phila., 494 F. Supp. 2d 307, 324 n.14 (E.D. Pa. 2007). This court finds that the Third Circuit's narrow definition of public records applies, and therefore, the defendants' exhibits must fall into one of the three defined categories to be considered a public record for purposes of consideration in this motion to dismiss.

Exhibit 1 is a police incident investigation report produced by the Rush Township Police Department, and while it may be available to the public, it

does not fall into any of the categories identified in *Pension.* Therefore, it is

not a public record for the purpose of this motion, and the court will not

consider it in ruling upon the instant motion to dismiss. Exhibit 2, the Criminal

Complaint filed against the plaintiff, is also attached to the defendants' motion

to dismiss. This exhibit, too, appears to be a document that is available and

accessible to the public; however, while it relates to a criminal case against

the plaintiff, it is not a criminal case disposition and does not fall into any of

the other categories outlined in *Pension*. Thus, Exhibit 2 does not qualify as

a public record and, as such, may not be considered by the court to determine

whether to grant the defendants' motion to dismiss.[2] The court adds, as a

policy note, that allowing police reports or criminal complaints and their

contents to fall within the public record exception under Rule 12(b)(6) would

---

[2] The defendants refer to *Shelley v. Wilson* for the proposition that police incident reports and criminal complaints are public records. 339 Fed. Appx. 136 (3d Cir. 2009) (not precedential opinion). However, this interpretation is misplaced. First, the *Shelley* court specifically states that the numerous documents attached to the motion to dismiss, which included a police incident report and a criminal complaint, "were matters of public record, *and/or* were integral to the false arrest claim." *Id.* at 137 n.2. Nowhere in the opinion does the court specify whether the police incident report and criminal complaint were considered because they were deemed public records rather than because they were integral to the false arrest claim. Given the *Shelley* court's refusal to specifically identify the documents as public records and failure to explain how or why the documents might be integral to the plaintiff's claims, this court concludes that *Shelley* does not support the defendants' proposition. In addition, the court notes that *Shelley* is a not precedential opinion, and therefore, is not binding upon this court.

likely incentivize improper bolstering by police officers to protect against and prevent litigation. Considering and assigning weight to police reports and corresponding police officer statements at such an early stage in litigation would create an enormous burden for plaintiffs to overcome in order to bring a Fourth Amendment claim. This would create an unlevel playing field and would fly in the face of federal pleading standards. In addition, consideration of these documents as public records would likely require the court to make credibility determinations, which is improper at the motion to dismiss stage.

The defendants also argue that the court should consider Exhibits 1 and 2 because they form the basis of, or are integral to, the plaintiff's claims, and thus fall into one of the exceptions that allows consideration of extrinsic documents. This exception permits the court to consider documents that are integral to or explicitly relied upon in the complaint. *See Lum*, 361 F.3d at 222 n.3. The Third Circuit has held that a complaint need not explicitly refer to or cite to the document in order to be considered under this exception, but instead "what is critical is whether the claims in the complaint are 'based' on an extrinsic document." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). In this case, the plaintiff's complaint does not mention or cite to Exhibits 1 and 2 at all. *See generally* Doc. 12. In addition, the plaintiff's claims do not allude to or rely on any content from the two exhibits, nor are the plaintiff's claims based, in any way, on the existence or content of these exhibits. *Id.* The court, therefore, finds that the Exhibits 1 and

2 do not form the basis for the plaintiff's claims and therefore may not be considered for this motion to dismiss.

Finally, the court takes judicial notice of the Pennsylvania Magisterial District Court docket: Commonwealth v. Hadesty, MJ-21306-cr-0000128-2014 (Magis. Dist. Ct. filed Mar. 27, 2014). This docket relates to the criminal charges Rush Township filed against the plaintiff, which are central to the plaintiff's malicious prosecution claims in this case. Federal Rule of Evidence 201, allows the court to take judicial notice at any stage of the proceeding. Fed. R. Evid. 201(d). The court "may take judicial notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court may do so on its own, "at any state of the proceeding." Fed. R. Evid. 201(d). A state court docket by its very nature can be accurately and readily determined, and the accuracy and authenticity of the docket cannot reasonably be questioned. Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage. In re Congoleum Corp., 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."); *see, e.g.*, In re Trichilo, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of the docket in an underlying case); Mollett v. Leith, No. CIV.A. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) *aff'd sub nom.* Mollett v. Leicth, 511 Fed. Appx. 172 (3d Cir. 2013) ("A

court may also take judicial notice of the docket in Plaintiff's underlying criminal trial."); Carroll v. Prothonotary, No. 08-1683, 2008 WL 5429622, at \*2 (W.D.Pa. Dec.31, 2008) (taking judicial notice of court records and dockets of the Federal District Courts). However, the Third Circuit has further stated that, at the motion to dismiss stage, a court may take judicial notice of another court's opinion only for the existence of the opinion, not for the truth of the facts asserted within the opinion. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

Because the plaintiff's complaint includes a claim for malicious prosecution, which requires a showing that charges were filed and later dropped, the date that the criminal complaint was filed as well as the date of dismissal of the charges are relevant to the plaintiff's claim. The criminal docket sets forth the relevant dates, events, and dispositions in the underlying criminal case, and therefore, the docket is relevant and may be considered in this motion to dismiss. Thus, the court takes judicial notice of the docket, but does not take notice of the facts asserted within any opinions referenced or included in the docket.

Ultimately, the court may not consider Exhibits 1 and 2, attached to the defendants' motion to dismiss, to decide the motion. But, the court takes judicial notice and will consider the state court docket. Commonwealth v. Hadesty, MJ-21306-cr-0000128-2014 (Magis. Dist. Ct. filed Mar. 27, 2014).

**B.    The Stop of the Plaintiff's Automobile**

The defendants claim they did not violate the plaintiff's Fourth Amendment rights when they stopped her automobile because they had probable cause to conduct the traffic stop. (Doc. 23, p. 4).

The Fourth Amendment of the Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. The Supreme Court has stated that temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" under the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809–10 (1996). Consequently, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Thus, the Fourth Amendment requires a police officer conducting a traffic stop to have at least reasonable suspicion of criminal activity. Delaware v. Prouse, 440 U.S. 648, 654 (1979). *See also* Commonwealth v. Andersen, 753 A.2d 1289, 1292–93 (Pa. Super. Ct. 2000). Moreover, courts determine whether reasonable suspicion exists by examining the totality of the circumstances surrounding the stop. *Whren*, 517 U.S. at 810; *Delaware*, 440 U.S. 654; Terry v. Ohio, 392 U.S. 1, 21–22 (1968). The Third Circuit has further held that "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren*, 517 U.S. at 810). So long as a police officer has probable cause to believe a traffic violation has

occurred, then he may constitutionally stop and temporarily detain the vehicle in question. *Whren*, 517 U.S. at 810.

In their motion to dismiss, the defendants claim they cannot be held liable because they had probable cause to stop the plaintiff's vehicle "due to [the plaintiff's] broken taillight." (Doc. 23, p. 3). Because failure to have a working taillight is a violation of the Pennsylvania Vehicle Code, 75 Pa. C.S.A. §4303(b), a police officer who observes a vehicle without an operating taillight has probable cause to stop the vehicle for a traffic violation. Therefore, it would appear that the defendant Officers Fort and Sinton had probable cause to stop the plaintiff because they allegedly observed her operating a vehicle with a broken taillight. However, this justification is only supported by facts in the police incident report, which the court has determined may not be considered at this stage in the litigation. (Doc. 23, Ex. 1, p. 2). Thus, the defendants explanation will not be considered or taken into account in the court's analysis of whether the plaintiff has stated a Fourth Amendment claim. The plaintiff alleges that the defendant officers solely stopped her car because she had a "loud exhaust," and driving a vehicle with a loud exhaust *is not* a traffic violation in Pennsylvania. (Doc. 12, ¶ 15). As a Rule 12(b)(6) motion to dismiss, the court must take the facts alleged by the plaintiff to be true, and must make all inferences in favor of the plaintiff.

The question then becomes whether the defendants had probable cause or at the very least reasonable suspicion to stop the plaintiff's vehicle

on the basis of the loud exhaust pipe. As noted, there is no traffic or vehicle code violation in the state of Pennsylvania for a loud exhaust pipe. Therefore, the defendant officers cannot claim that after observing loud exhaust, they had probable cause to stop the plaintiff's vehicle due to traffic violations. Furthermore, no other facts alleged in the complaint demonstrate that the police officers had cause to suspect or believe that criminal activity was afoot. Without more, the court cannot conclude, at this stage of the litigation, whether the police officers had reasonable suspicion or probable cause to stop the plaintiff's vehicle on the night in question. Therefore, the plaintiff provides sufficient factual allegations to support a claim that defendants Sinton and Fort stopped her vehicle in violation of the Fourth Amendment.

The defendants also contend that the defendant Officers Sinton and Fort are entitled to qualified immunity for their decision to stop the plaintiff. (Doc. 23, pp. 4-5). The defendants' qualified immunity argument rests upon the assertion that they stopped the plaintiff for a broken taillight, which, again, is a fact included in extrinsic documents that the court may not consider at this stage. The common law privilege of qualified immunity protects public officials who have undertaken discretionary acts from suit "to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (citing Hunter v. Bryant, 502 U.S. 224, 227

(1991)). But the immunity may be overborne under a two-prong analysis. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Saucier v. Katz, 533 U.S. 194, 201–02, *abrogated in part by Pearson*, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). Courts must ask: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 232; *Wright*, 409 F.3d at 600; and (2): "whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 232; *Wright*, 409 F.3d at 600. The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 201 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). If there was a violation of a constitutional right and the right was clearly established, then qualified immunity does not apply. Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case." *Pearson*, 555 U.S. at 236.

As stated above, the court finds that the plaintiff has alleged sufficient facts, at this stage of the litigation, to demonstrate that the officers stopped the plaintiff's vehicle for a "loud exhaust," and that this stop may constitute an unconstitutional seizure. Therefore, the first prong of the qualified immunity analysis is satisfied in favor of the plaintiff. Next, the court must determine

whether the right violated was clearly established. The U.S. Supreme Court as well as Pennsylvania state courts have clearly held that a police officer must have at least reasonable, articulable suspicion that criminal activity is afoot to lawfully conduct a traffic stop. Delaware v. Prouse, 440 U.S. 648, 654 (1979); Commonwealth v. Andersen, 753 A.2d 1289, 1292–93 (Pa. Super. Ct. 2000); *see also* Terry v. Ohio, 392 U.S. 1, 21–22 (1968). The facts alleged in the complaint demonstrate that the plaintiff's vehicle was stopped due to a "loud exhaust," which is not a traffic violation and, standing alone, does not create a reasonable suspicion that any type of criminal activity was afoot. A reasonable officer would understand that stopping the plaintiff under these circumstances would violate a clearly established right against unreasonable seizure. Consequently, this court finds that, taking the plaintiff's allegations to be true, the defendants are not entitled to qualified immunity for conducting a stop of the plaintiff's vehicle at this stage in the litigation.

As such, the court denies the defendants' motion to dismiss on the ground that they had probable cause to stop the plaintiff's vehicle and that they are entitled to qualified immunity.

## C.    The Search and Seizure

The defendants further argue that the plaintiff fails to plead sufficient facts to state a claim for unconstitutional search and seizure following the initial stop. (Doc. 23, pp. 6, 7). Specifically, they contend that the plaintiff does not plausibly plead any claim related to the search and seizure of the pill

bottle or the vehicle. *Id.* at 6. In support of this conclusion, the defendants rely upon Supreme Court and Third Circuit precedent governing plain view seizures and consent-based searches.

The "plain view" doctrine permits warrantless seizure of evidence that is within plain view under limited circumstances. "There are three requirements for valid seizures of evidence in plain view. First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Kentucky v. King, 563 U.S. 452, 453, 463 (2011) ("[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made"); United States v. Russell, 2011 U.S. Dist. LEXIS 46018 (E.D. Pa. Apr. 27, 2011) ("the officers were lawfully in the position from which they could view the evidence"); *see also* United States v. Paige, 136 F.3d 1012, 1023 (5th Cir. Tex. 1998) ("[M]aking this determination ordinarily involves analyzing whether a warrant or an exception to the warrant requirement justified the officer's arrival at the 'plain-viewing' position."). Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself." United States v. Stabile, 633 F.3d 219 (3d Cir. 2011); Horton v. California, 496 U.S. 128, 141 (1990); United States v. Menon, 24 F.3d 550, 559-60 (3d Cir. 1994).

In this case, after stopping the plaintiff's vehicle, defendants Sinton and

Fort viewed a pill bottle in the center console in plain view. (Doc. 12, ¶ 19). Turning to the first requirement, if the facts alleged in the complaint are taken to be true, then the initial stop of the vehicle may constitute a Fourth Amendment violation. If the defendants allegedly violated the Fourth Amendment in arriving at the position from which the pill bottle could be plainly viewed, then, at this stage in the proceedings, they cannot satisfy the first requirement of the plain view analysis. Since the first element cannot be satisfied, the court finds it unnecessary to address the second and third requirement at this time.

The defendants further argue that their search of the pill bottle, the plaintiff's purse, and the vehicle were lawful because they obtained valid consent from the plaintiff to engage in such conduct. (Doc. 23, p. 6). "It is well settled that the government may undertake a search without a warrant or probable cause if an individual consents to the search." United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994). Police officers may justify a search on the basis of an individual's consent so long as "the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973).

Furthermore, in *Kentucky v. King,* the Supreme Court stated that law enforcement "may seek consent-based encounters *if they are lawfully present* in the place where the consensual encounter occurs." *King*, 563 U.S. at 453, 463 (citing I.N.S. v. Delgado, 466 U.S. 210, 217 n.5 (1984)). This holding is

rooted in the longstanding principle that "warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement." *Id.* at 462. The Supreme Court in *Kentucky* found it was unreasonable to allow searches under circumstances where a police officers' unreasonable conduct allowed the officers to avoid the warrant or probable cause requirement. The Court applied this rationale not only to consent-based encounters, as stated above, but also to police-created exigencies and plain view seizures. *Id.* at 462-63. Ultimately, the court held that "the Fourth Amendment requires only that the steps preceding the seizure [or search] be lawful." *Id.* at 463.

Thus, if an officer is in a position to seek consent *solely due to a violation of the Fourth Amendment*, then any subsequent consent-based search or seizure is invalid because it is therefore unreasonable to dispense of the Fourth Amendment warrant requirement. *Id.*

At this stage, the plaintiff has alleged facts demonstrating that defendants Sinton and Fort stopped the plaintiff without reasonable suspicion or probable cause, thereby violating the Fourth Amendment. The plaintiff further sets forth factual allegations that the search and seizure of the pill bottles and her vehicle occurred after the alleged unlawful stop. The defendants were allegedly only in a position to seek consent to search the plaintiff's vehicle, purse, and pill bottles because they violated the Fourth Amendment. Therefore, applying the rationale from *Kentucky* to the facts

21

alleged in the complaint, the officers' consent-based search of the pill bottles, the plaintiff's purse, and her vehicle were made possible by the defendants' unreasonable conduct, and as a result, the subsequent searches of the pill bottle, purse, and vehicle are invalid and unlawful.

The facts alleged preclude a finding that the defendant officers search and seizure was lawful under the plain view doctrine or on the basis of consent. Thus, the court finds that the plaintiff has pled facts sufficient to state a plausible claim that the defendants violated the Fourth Amendment through the search and seizure of the pill bottles, her purse, and the vehicle the plaintiff was driving. The complaint withstands the defendants' motion to dismiss on these grounds.

## D.   Malicious Prosecution Claim

The defendants argue that the plaintiff fails to state a claim for malicious prosecution because she "fails to allege any 'seizure' as a result of the charges" and because defendants Sinton and Fort did not initiate the prosecution of the plaintiff. (Doc. 23, pp. 7, 11). The plaintiff refutes this argument by stating that the unreasonable stop and subsequent seizure qualify as sufficient Fourth Amendment violations, and also contends that defendants Sinton and Fort initiated the prosecution by "provid[ing] false information to Officer Frederick and the prosecution." (Doc. 27, p. 9).

In order to prove "malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the

22

defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007). "Failure to meet any element is fatal to the claim." Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).[3]

The court will first address the defendants' argument that the plaintiff "fails to allege any 'seizure' as a result of the charges." (Doc. 23, p. 7). As the Third Circuit clearly states, a necessary element of a section 1983 malicious prosecution claim is that the plaintiff suffer an unconstitutional seizure "*as a consequence* of a legal proceeding." *Johnson*, 477 F.3d at 81-82 (emphasis added). Therefore, the plaintiff must provide facts sufficient to prove that the legal proceedings instigated resulted in and were *followed by* an unconstitutional seizure. Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (holding that the plaintiffs only "recite[d] facts pertaining to their seizure and arrest prior to the institution of a legal proceeding" and therefore they "failed to allege a deprivation of liberty as a result of a legal

---

[3] The plaintiff's malicious prosecution claim is listed as one of four claims in Count I of the complaint. (Doc. 12, p. 8). Count I is entitled "Violation of 42 U.S.C. Section 1983." *Id.* Therefore, the court deems her malicious prosecution claim to be a federal malicious prosecution claim under section 1983–not a Pennsylvania state law claim–and will treat it as such.

proceeding."); *see also* Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). The sequence of the initiation of proceedings and unconstitutional deprivation are integral to the instant analysis. As stated previously, the plaintiff's complaint includes factual allegations that sufficiently state a plausible claim for an unlawful stop, search, and seizure. However, these Fourth Amendment violations occurred on the night of March 5, 2014. (Doc. 12, ¶ 14). Yet, the criminal charges were not filed against the plaintiff until March 27, 2014. Commonwealth v. Hadesty, MJ-21306-cr-0000128-2014 (Magis. Dist. Ct. filed Mar. 27, 2014). Because the plaintiff has failed to plead any additional facts demonstrating a seizure or Fourth Amendment violation that occurred on or after March 27, 2014 and resulted from the charges filed by Sergeant Frederick, she has not satisfied the final element of a section 1983 malicious prosecution claim.

Because failure to satisfy any one element is fatal, the court need not address the defendants' second argument that Officers Sinton and Fort did not initiate the proceedings against the plaintiff. Ultimately, the plaintiff failed to allege facts sufficient to demonstrate an unconstitutional seizure, and therefore, fails to state a plausible claim for malicious prosecution against the defendants. The defendants' motion to dismiss the malicious prosecution claim will be granted.

**E.     Ryan Township's Municipal/Supervisory Liability[4]**

The plaintiff brings constitutional claims against Ryan Township pursuant to 42 U.S.C. §1983 for its actions in developing and implementing policy that resulted in constitutional violations and for failing to train or supervise the other individual defendant police officers. The defendants move to dismiss these claims on two related grounds. First, the defendants claim that Ryan Township cannot be liable if the court finds that defendants Sinton and Fort never violated the plaintiff's rights. (Doc. 23, p. 12) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Because the court has already determined that the plaintiff sufficiently states a claim for unconstitutional search and seizure against the defendants, the court finds that the defendants may have violated the plaintiff's rights and, therefore, need not address this argument.

---

[4] A municipal police department cannot be sued separately from the municipality of which it is a part because it is not a separate independent entity. *See* Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997); Debellis v. Kulp, 166 F.Supp.2d 255, 264 (E.D. Pa.2001) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."); Shilling v. Brush, No. 05-871, 2005 U.S. Dist. LEXIS 33912, at *7-10 (M.D.Pa. Aug. 26, 2005) (explaining that police departments are not suable entities in Section 1983 actions). Therefore, though both Ryan Township and Ryan Township Police Department are listed as defendants in the caption of this case only Ryan Township may be held liable. Rush Township and Rush Township Police Department were also both named as defendants in this case, and the same reasoning applies and only Rush Township may be held liable.

Second, the defendants argue that Ryan Township cannot be liable in this action because the plaintiff has failed to meet the high standard required to state a claim for municipal and supervisory liability under section 1983. (Doc. 23, p. 12). Specifically, the defendants claim that the plaintiff "fails to show any official policy or widespread practice and does not allege any prior violation that would show that Ryan Township was deliberately indifferent to an obvious need for additional training." *Id.* at 13.

To establish a claim under section 1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Liability under section 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F. Supp. 2d 319, 325 (M.D. Pa.2011) (quoting *Robinson*, 120 F.3d, at 1294 ).

A municipality is a "person" for purposes of section 1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689

(1978) ). But section 1983 does not allow municipal liability under a theory of *respondeat superior*. *Id.*; *see also* Brickell v. Clinton County Prison Bd., 658 F. Supp. 2d 621, 626-27 (M.D. Pa. 2009). A municipality is not liable under section 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Brown*, 520 U.S. at 403. The plaintiff bears the burden of identifying the policy or custom. *Id.* This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.* Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

The plaintiff has not met her burden of identifying a policy or custom of Ryan Township that violated her Fourth Amendment rights. Her complaint only states that she was deprived of her constitutional rights in the following manners:

> (e)     in the development, implementation, and carrying out of a policy, practice or procedure designed to allow unlawful searches and seizures and deprivation of Constitutional rights of citizens;
>
> (f)      in the development, implementation, and carrying out of a policy, practice, procedure or custom which made no

> reasonable efforts to comply with standards for police encounters and the utilization of equipment and training that would have prevented the overreaction by the police to the events of that day;
>
> (g)    in deliberately failing to train, or continue the training of, all the Defendants in the recognition of the proper techniques of responding to matters and circumstance similar to those at issue in the instant case;
>
> (h)    in failing to oversee, monitor, control, curtail, or restrain the actions of the individual Defendants in carrying out such operations when all of the Defendants knew, or should have known, from prior operations of this kind, and/or from prior acts of misconduct by the individual Defendants, that the likelihood of physical and psychological injury and the deprivation of the constitutional rights of innocent citizens would be substantial[.]

(Doc. 12, ¶ 40). These allegations are general and conclusory, and fail to specifically identify any policy or custom that Ryan Township had in place.

Despite these general allegations, in her brief, the plaintiff argues that official policy may be inferred from the action(s) or omission(s) of municipal officials. (Doc. 27, p. 11). She cites to *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 (3d Cir. 1988), and *Bartholomew v. Fischl*, 782 F.2d 1148, 1154 (3d Cir. 1986), to state that a single instance of misconduct may lead to an inference of official policy. However, the plaintiff misquotes and appears to misinterpret the holdings of these two cases. The plaintiff specifically quotes *Bartholomew* as stating, "it is possible that a single instance of misconduct by an official could provide the basis for an inference that an official policy existed." (Doc. 27, p. 11). This would lead one to believe that

28

the act of any government official could allow the court to infer that official policy existed. Upon review of *Bartholomew* and this proposition, it appears that the plaintiff misquotes the case in an important way. The quote actually reads, "it is possible that a 'single instance' of misconduct by *a policymaking city official* could provide the basis for an inference that a municipal policy existed." Bartholomew v. Fischl, 782 F.2d 1148, 1154 (3d Cir. 1986) (emphasis added).[5] Thus, the case law stands not for the proposition alluded to by the plaintiff, but for the principle that "[s]ome officials may occupy sufficiently high policy-making roles that any action they take under color of state law will be deemed official policy" for the purpose of determining *Monell* liability. *Bartholomew*, 782 F.2d 1148, 1154 (3d Cir. 1986).

To determine whether an official has final policy-making authority as contemplated in *Bartholomew*, the court must determine:

> (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, McMillian v. Monroe County, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) and City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988), and (2) whether the official's authority to make policy in

---

[5] The court also notes that *Colburn v. Upper Darby Township*, the second case upon which the plaintiff relies for the above stated proposition, is consistent with the holding in *Bartholomew*. 838 F.2d 663 (3d Cir. 1988). The plaintiff correctly quotes *Colburn* to state that "an 'official policy' may be inferred 'from informal acts or omissions of supervisory municipal officers,'" however the plaintiff fails to address the relevance of the term "supervisory municipal officers." *Id.* at 671. This term refers to a municipal officer with the type of policy-making authority referred to in *Bartholomew.*

that area is final and unreviewable. *Praprotnik*, 485 U.S. 112, 108 S.Ct. at 926; *Pembaur*, \*246  475 U.S. at 483, 106 S.Ct. 1292; *McGreevy*, 413 F.3d at 369; *Brennan*, 350 F.3d at 428 ("if a municipal employee's decision is subject to review . . . it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under §1983").

Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006). In this case, all individual defendants whose conduct is at issue are municipal police officers. The plaintiff has provided no facts to demonstrate that these officers are responsible for making policy for standard police behavior or for the police department's conduct as it relates to Fourth Amendment searches and seizures. The plaintiff also has not alleged that the police officers' conduct and authority is final and unreviewable by superior police officers or superior municipal officials with actual policy-making authority. Due to the plaintiff's failure to demonstrate that the police officers' conduct provides the basis for an inference of official policy as well as her failure to point to or reference a specific policy or custom governing Ryan Township police behavior, the court finds that she has failed to sufficiently demonstrate that Ryan Township is liable for its policy and custom as referenced in subsection (e) and (f) of her complaint, excerpted above.[6]

---

[6] Subsection (e) and (f) are as follows:

(e)    in the development, implementation, and carrying out of a policy, practice or procedure designed to allow unlawful searches and seizures and deprivation of Constitutional rights of citizens;

(f)    in the development, implementation, and carrying out of a

The plaintiff further claims that Ryan Township is liable under a theory of municipal liability for failing to properly train and supervise defendants Sinton and Fort. (Doc. 27, ¶ 40 (g), (h)). The plaintiff must demonstrate that the municipality's failure as it relates to training and supervision amounts to "deliberate indifference." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). Deliberate indifference, requires a showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999). And, the plaintiff must further demonstrate that her constitutional injury was actually caused by the municipality's failure to supervise or train its employees. *Id.* at 357 n.61; *see also* Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005). Municipal liability based upon failure to train or supervise places a high burden on the plaintiff, and generally requires showing a pattern of violations. Kline v. Mansfield, 255 Fed. Appx. 624, 629 (3d Cir. 2007).

The plaintiff in this case, again, provided the court with nothing more

---

policy, practice, procedure or custom which made no reasonable efforts to comply with standards for police encounters and the utilization of equipment and training that would have prevented the overreaction by the police to the events of that day[.]

(Doc. 12, ¶ 40).

than general statements relating to Ryan Township's failure to supervise or train its employees. Subsections (g) and (h), mentioned previously, state that the municipality "deliberately fail[ed] to train, or continue the training of, all the Defendants in the recognition of the proper techniques of responding to matters and circumstance similar to those at issue in the instant case," and that they also "fail[ed] to oversee, monitor, control, curtail, or restrain the actions of the individual Defendants in carrying out such operations when all of the Defendants knew, or should have known, from prior operations of this kind, and/or from prior acts of misconduct by the individual Defendants, that the likelihood of physical and psychological injury and the deprivation of the constitutional rights of innocent citizens would be substantial." (Doc. 12, ¶ 40 (g), (h)). This language does not provide or point to any facts that would establish deliberate indifference, but instead makes broad, conclusory statements that simply serve to list elements of the relevant legal claim. Specifically, the plaintiff does not provide any factual allegations to demonstrate that Ryan Township policymakers knew that police officers were likely to confront a situation like the one at issue. The plaintiff only mentions whether a pattern of violations of this kind exists within the Ryan Township police department in a non-specific, generalized manner. Finally, the plaintiff does not provide facts to support her conclusion that a wrong choice by an employee is likely to and often causes deprivation of constitutional rights. Furthermore, even if the plaintiff provided factual allegations to support the

deliberate indifference in this context, she still fails to include any factual allegations to establish the requisite causal connection. She fails to show a close relationship between the alleged failure to train/supervise and violation of the plaintiff's constitutional rights, and there is no way to tell whether the alleged Fourth Amendment violations would occur if additional training or supervision were conducted.

When deciding a motion to dismiss, the court is only bound to take into consideration factual allegations, and need not consider those that are conclusory. "[A] formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55 (2007)). Because the plaintiff solely provided broad generalizations and sweeping conclusory statements with regard to any theory of municipal liability, the court finds that she failed to provide sufficient facts to support a plausible claim against Ryan Township. Thus, all claims against Ryan Township are dismissed.

## F.   Pennsylvania's Political Subdivision Tort Claims Act

The defendants contend that Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") bars state law claims asserted by the plaintiff, namely her claim for false imprisonment. (Doc. 23, p. 13). The PSTCA provides immunity to local agencies and their employees "for any damages on account of any injury to a person or property caused by any act of the local agency or

an employee thereof or any other person." 42 Pa. Cons. Stat. §8541. There are, however, several exceptions to this immunity enumerated in the statute. One such exception provides, "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a *crime, actual fraud, actual malice* or *willful misconduct.*" 42 Pa. Cons. Stat. §8550 (emphasis added). Willful misconduct, for the purpose of this provision, is defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994); *see also* Vargas v. City of Philadelphia, 783 F.3d 962, 975 (3d Cir. 2015).

The defendants cite to the Third Circuit case, *Spiker v. Whittaker*, to bolster the argument that their actions under the circumstances do not amount to willful misconduct. (Doc. 23, p. 14) (citing *Spiker v. Whittaker*, 553 Fed. Appx. 275, 281 n.6 (3d Cir. 2014) (not precedential opinion)). In *Spiker*, the Third Circuit affirmed the District Court's finding that the plaintiff's complaint solely asserted that the defendant "knew or should have know[n]" he lacked probable cause to arrest the plaintiff. *Spiker*, 553 Fed. Appx. at 281 n.6. According to the District Court, the complaint did not provide any additional facts demonstrating that the defendant *desired* or *knew* that his conduct was "substantially certain to cause harm unlawfully" to the plaintiff.

Spiker v. Allegheny Cty. Bd. of Prob. & Parole, 920 F. Supp. 2d 580, 613 (W.D. Pa. 2013), *aff'd sub nom. Spiker*, 553 Fed. Appx. 275. Ultimately, the District Court found the plaintiff's "bald conclusion . . . insufficient to support a plausible claim" for willful misconduct, and the Third Circuit affirmed both the conclusion and the reasoning. *Id.*

In *Spiker,* the plaintiff only provided a conclusory allegation that, even if found to be factual rather than conclusory, solely recited the standard of culpability for negligence rather than willful misconduct. Negligence is insufficient to overcome immunity under the PSTCA. In the instant action, the plaintiff's complaint states that the defendants "intended and actually confined Plaintiff without reasonable suspicion." (Doc. 12, ¶ 43). This statement alone distinguishes the case from *Spiker*. The plaintiff clearly alleges that the defendants "intended," or "desired to bring about" confinement without reasonable suspicion, which comports with the willful misconduct standard noted above, not the negligence standard set forth in *Spiker*. While this allegation skirts the line between conclusory and factual, the plaintiff also provides additional, detailed factual allegations that support a finding that the defendants intended to unlawfully confine the plaintiff. Specifically, the plaintiff alleges that defendants Sinton and Fort followed her for an extended period of time prior to stopping her vehicle, (Doc. 12, ¶ 16), and then stopped her car based solely on "loud exhaust," which is not a traffic violation. *Id.* ¶ 15. Furthermore, the plaintiff establishes that the defendants were familiar with

35

her, and already knew her identity as they approached her vehicle. *Id.* ¶ 17. After the stop and alleged seizure concluded, the defendants did not even cite her for "loud exhaust," the reason for which they allegedly initially stopped the plaintiff. *Id.* ¶ 35. These facts in conjunction with the plaintiff's allegation that the defendants "intended" to unlawfully stop or confine her, sufficiently support an inference that the defendants "desired to bring about the result that followed," and thus sufficiently support a claim for willful misconduct. Because the plaintiff has pled facts plausibly demonstrating willful misconduct under the PSTCA, her state law claim for false imprisonment is not barred, and dismissal on that ground is denied.

## G.   Pennsylvania Constitutional Claims

The defendants argue that the plaintiff "cannot bring a claim under the Pennsylvania Constitution." (Doc. 23, p. 14). In support of this argument, the defendants cite to *Jones v. City of Philadelphia*, a case from the Commonwealth Court of Pennsylvania, which holds that no monetary remedy exists for a violation of Article I, Section 8 of the Pennsylvania Constitution, which governs searches and seizures. 890 A.2d 1188, 1208 n.33 (Pa. Commw. Ct. 2006). While the Pennsylvania Supreme Court has yet to rule on whether there is a cause of action for monetary damages under the Pennsylvania Constitution, courts within the Third Circuit have consistently followed the holding in *Jones* and found that the Pennsylvania Constitution does not "confer a private right of action on an individual who seeks to recover

36

damages from a defendant." Pollarine v. Boyer, 2005 U.S. Dist. LEXIS 15425 (E.D. Pa. July 29, 2005); *see also* Kobrick v. Stevens, No. CIV.A. 3:13-2865, 2014 WL 4914186, at \*7 (M.D. Pa. Sept. 30, 2014); Kaucher v. Cty. of Bucks, No. CIV.A.03-1212, 2005 WL 283628, at \*11 (E.D. Pa. Feb. 7, 2005) *aff'd*, 455 F.3d 418 (3d Cir. 2006) (finding that, in the federal districts, "[i]t has been widely held that the Pennsylvania Constitution does not provide a direct right to damages.").

The plaintiff has not addressed this ground for dismissal at all in her submissions to the court. Therefore, this court finds no basis upon which to deviate from the reasoning of the above cases and finds that there is no private cause of action for monetary damages under the Pennsylvania Constitution. Dismissal of Count I of the plaintiff's complaint insofar as it includes claims for illegal search, illegal seizure, and malicious prosecution under Section 8 of the Pennsylvania Constitution is granted.

## H.    Fourteenth Amendment Due Process Claim

The defendants also seek dismissal of the plaintiff's Fourteenth Amendment due process claims relating to the asserted unlawful searches and seizures. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395

(1989)) (quotation marks omitted); Tolan v. Fedorchak, No. 07–3870, 2009 WL 3128431, at \*5 (M.D. Pa. Sept. 28, 2009) ("Here, a specific Constitutional provision, the Fourth Amendment, 'provides [Plaintiff with] an explicit textual source of constitutional protection' against unlawful seizures. *Albright*, 510 U.S. at 271. This Court, therefore, need not separately address Tolan's Fourteenth Amendment due process claim.").

In this case, the Fourth Amendment protection against unreasonable searches and seizures provides an explicit textual source of constitutional protection. All of the plaintiff's Count I constitutional claims relate to Fourth Amendment violations, and therefore, the Fourth Amendment guides our analysis. This court agrees with the defendants' analysis and finds that any Fourteenth Amendment claims cannot stand.

However, the plaintiff's complaint only refers to the Fourteenth Amendment in the "Jurisdiction and Venue" section. (Doc. 12, ¶ 1). Counts I and II, outlining the plaintiff's legal claims, do not mention or cite to the Fourteenth Amendment at all. In her opposition to the instant motion to dismiss, the plaintiff clarifies that inclusion of the Fourteenth Amendment was not to provide a ground for substantive due process claims. She solely made reference to the Fourteenth Amendment for its incorporation function. (Doc. 27, pp. 13-14). The Fourth Amendment is incorporated to the states and the conduct of state officials by the Fourteenth Amendment. She mentioned the Fourteenth Amendment to ensure that she created a proper foundation for

asserting Fourth Amendment claims against state actors.

While the court agrees with the defendants' argument that Fourteenth Amendment due process claims may not stand, this argument is not applicable under the circumstances. Therefore, the motion to dismiss on this ground is granted only to the extent that there is a claim under the Fourteenth Amendment.

## I.    Punitive Damages Against the Municipality

In their final argument for dismissal, the defendants assert that claims seeking punitive damages against municipalities are barred, and any such claims must be dismissed. (Doc. 23, p. 15). The plaintiff's complaint states that "punitive damages are justified factually and legally due to the outlandish and outrageous conduct, actions, and/or omissions of Defendants as aforesaid." (Doc. 12, ¶ 41(c)). This language indicates that she is seeking punitive damages against *all* defendants–the individual officers and the two municipalities (Ryan Township and Rush Township). In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. §1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271(1981); *see also* Cook Cty., Ill. v. U.S. ex rel. Chandler, 538 U.S. 119, 129 (2003). In addition, the Supreme Court of Pennsylvania is in agreement with the holding in *City of Newport* and has also held that a plaintiff may not seek punitive damages against a municipality for state law claims. Feingold v. Se. Pa. Transp. Auth., 517 A.2d 1270, 1277 (Pa.

1986). The United States and Pennsylvania Supreme Courts have made clear that a plaintiff is not entitled to punitive damages against a municipality, and therefore, the plaintiff in this case is barred from seeking punitive damages against Ryan Township and Rush Township, as both are municipalities.

The plaintiff does not dispute the principles of law identified above, and in her opposition, she states that she agrees with the defendants' argument. In her opposition, she clarifies that she only seeks punitive damages against the individual officers named as defendants in the case, not against the municipalities. Despite the plaintiff's clarification and in an abundance of caution, the court will grant the defendants' motion to dismiss any claim for punitive damages against defendants Ryan Township and Rush Township. Claims for punitive damages against defendants Frederick, Sinton, and Fort remain intact.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be **DENIED IN PART** and **GRANTED IN PART**. An appropriate order shall follow.

S/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 15, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2319-01.wpd